UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| TRISTAN ROSE PERKINS, Independent Administratrix of Succession of the Decedent GERALDINE RABB PERKINS,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>Defendant. | CASE NO.  3:22-cv-05701-RJB<br><br>ORDER ON THE UNITED STATES' PARTIAL MOTION TO DISMISS |

This matter comes before the Court on the United States' Partial Motion to Dismiss for Lack of Subject Matter Jurisdiction.  Dkt. 15.  The Court has considered the pleadings filed in support of and in opposition to the motion and the file herein.

This case arises from the June 6, 2020 death of Geraldine Rabb Perkins from pleural mesothelioma allegedly resulting from para-occupational and environmental exposure to asbestos fibers originating from Puget Sound Naval Shipyard ("PSNS").  Dkt. 1.  Her husband, Harang Joseph Perkins, an enlisted Navy Machinist Mate, was stationed at PSNS between 1968 and 1974.  Id.  Mrs. Perkins did his laundry and the family lived in a home less than a mile from

ORDER ON THE UNITED STATES' PARTIAL MOTION TO DISMISS - 1

1 | PSNS. *Id.* The Plaintiff, Mrs. Perkins' daughter and administratrix, sues the United States under
2 | the Federal Tort Claims Act, ("FTCA") 28 U.S.C. § 2671 *et. seq.*, for damages. *Id.*
3 | The United States now moves to dismiss a portion of the Plaintiff's claims asserting that it is
4 | entitled to the discretionary function exception to the FTCA's waiver of sovereign immunity.
5 | Dkt. 15. It also maintains that Plaintiff's claims for failure to warn should be dismissed on
6 | alternative grounds. *Id.* For the reasons provided below, the United States' motion (Dkt. 15)
7 | should be granted, in part, and denied, in part.

## I. FACTS

On September 3, 1968, Mr. Perkins was transferred by the United States Navy to PSNS. Dkt. 15-4 at 3. Mrs. Perkins and their children moved with him and lived near the base in Bremerton, Washington. Dkt. 1 at 6. Mr. Perkins was initially assigned to the security division. Dkt. 15-4 at 16.

According to his December 17, 1969 to June 8, 1970 performance evaluation, Mr. Perkins was reassigned to maintenance of the steam heating system of vessels at PSNS. Dkt. 15-4 at 13. This work included "maintain[ing] and repair[ing] steam leaks by replacing lines, thermostats and maintain[ing] all heating and ventilation systems onboard . . ." Dkt. 15-4 at 14.

On June 22, 1970, Mr. Perkins was transferred to Danang, Vietnam. Dkt. 15-4 at 3. In May of 1971, Mr. Perkins joined the *USS Sacramento* (Dkt. 15-4 at 4) while she was at sea. During the time Mr. Perkins was onboard and until August 1971, the *USS Sacramento* provided support to the United States fleet combat operations in Southeast Asia by providing fuel, ammunition and other supplies to combat units. Dkt. 15-4 at 27.

By December 1, 1971, the *USS Sacramento* was at PSNS in Bremerton, Washington for an overhaul. Dkt. 15-5 at 5. In his June 2, 1971 to December 1, 1971 performance evaluation, it

was noted that Mr. Perkins was "assigned to the [forward] engine room for maintenance and supervisory duties." Dkt. 15-4 at 11. The evaluator noted that Mr. Perkins "desires an opportunity to obtain training in areas he feels he is not fully qualified in. [Mr. Perkins] is presently involved in an extensive overhaul and is doing his best to learn, do and lead . . ." Dkt. 15-4 at 11. The Navy sent Mr. Perkins to a training school in San Diego, California from January 22, 1972 to April 20, 1972. Dkt. 15-4 at 20. During that time, he completed several classes including those entitled "Boiler Inspection and Automatic Combustion Control," "Operation of Naval Propulsion Machinery," "Machinery (Steam Operated Pumps) Operations and Maintenance," and "Machinist Mate Maintenance." Dkt. 15-4 at 29.

After attending training, Mr. Perkins returned to PSNS and the *USS Sacramento.* Dkt. 15-4 at 9. According to his performance evaluation, dated December 2, 1971 to June 1, 1972, it was noted that after returning from training, he initially was assigned as a training assistant for a month (until around May 20, 1972), but was then transferred to the "POL Division," "a division of twenty-seven men." Dkt. 15-4 at 9. There is no indication in the record what the "POL Division" was. His performance evaluation also mentions his work as a "Repair Five" training petty officer. Dkt. 15-4 at 10.

On August 12, 1972, Mr. Perkins was admitted to the Naval Hospital in Bremerton, Washington and was not released from the hospital until November 9, 1972. Dkt. 15-4 at 6. The parties do not contend that his hospitalization was related to asbestos exposure. After his release from the hospital, Mr. Perkins was placed on permanent limited duty and worked at PSNS's Special Services Hobby Shop, bowling alley, and the barracks. Dkt. 15-4 at 6-7. He was transferred to Corpus Christie, Texas in March of 1974 and his family, including Mrs. Perkins, went with him. Dkt. 15-4 at 22.

ORDER ON THE UNITED STATES' PARTIAL MOTION TO DISMISS - 3

Many years later, on February 21, 2020, Mrs. Perkins was diagnosed with pleural mesothelioma. Dkt. 1 at 7. She succumbed to her illness and died on June 6, 2020. *Id.* Her daughter and administratrix filed this case on September 19, 2022 pursuant to the FTCA. *Id.*

## II.   DISCUSSION

### A.   STANDARD FOR MOTION TO DISMISS

A complaint must be dismissed under Fed. R. Civ. P. 12(b)(1) if, considering the factual allegations in the light most favorable to the plaintiff, the action: (1) does not arise under the Constitution, laws, or treaties of the United States, or does not fall within one of the other enumerated categories of Article III, Section 2, of the Constitution; (2) is not a case or controversy within the meaning of the Constitution; or (3) is not one described by any jurisdictional statute. *Baker v. Carr*, 369 U.S. 186, 198 (1962); *D.G. Rung Indus., Inc. v. Tinnerman*, 626 F.Supp. 1062, 1063 (W.D. Wash. 1986); *see* 28 U.S.C. §§ 1331 (federal question jurisdiction) and 1346 (United States as a defendant).

The United States, as sovereign, is immune from suit unless it consents to be sued. *See United States v. Mitchell*, 445 U.S. 535, 538 (1980); *Cato v. United States*, 70 F.3d 1103, 1107 (9th Cir. 1995). The FTCA, the statute upon which this case is brought, is a limited waiver of sovereign immunity. *See* 28 U.S.C. § 1346 (b). (The FTCA is the exclusive remedy for state law torts committed by federal employees within the scope of their employment. 28 U.S.C. § 2679 (b)(1)). "The FTCA was created by Congress with the intent to compensate individuals harmed by government negligence, and as a remedial statute, it should be construed liberally, and its exceptions should be read narrowly." *Terbush v. United States*, 516 F.3d 1125, 1135 (9th Cir. 2008).

### B.   DISCRETIONARY FUNCTION EXCEPTION TO FTCA'S WAIVER OF SOVEREIGN IMMUNITY

Among the exceptions to the FTCA waiver of sovereign immunity is the "discretionary function exception." It excludes:

> Any [§ 1346] claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid, or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.

28 U.S.C. § 2680(a). "The discretionary function exception insulates certain governmental decision-making from judicial second guessing of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort." *Myers v. U.S.*, 652 F.3d 1021, 1028 (9th Cir. 2011). The Plaintiff bears the "burden of showing there are genuine issues of material fact as to whether the exception should apply, but the government bears the ultimate burden of establishing that the exception applies." *Schurg v. United States of Am.*, 63 F.4th 826, 831–32 (9th Cir. 2023).

A two-step test is used to determine whether the discretionary function applies. *Terbush*, at 1129 (citing *Berkovitz v. United States*, 486 U.S. 531, 536–37 (1988)). In the first step, the court determines "whether challenged actions involve an element of judgment or choice." *Id*. "The discretionary element is not met where a federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow." *Id.* The inquiry ends if there is such a statute or policy directing mandatory and specific action because there can be no element of discretion when an employee "has no rightful option but to adhere to the directive." *Id*.

If the challenged actions do involve an element of judgment or choice, then the court turns to the second step in the test in the discretionary function exception test. *Terbush*, at 1129.

The second step requires the court to decide "'whether that judgment is of the kind that the discretionary function exception was designed to shield,' namely, 'only governmental actions and decisions based on considerations of public policy.'" *Terbush*, at 1130 (*quoting Berkovitz* at 536-37). "More specifically, if the judgment involves considerations of social, economic, or political policy, the exception applies." *Nieves Martinez v. United States*, 997 F.3d 867, 876 (9th Cir. 2021).

In its partial motion to dismiss, the government argues that the following claims are barred by the discretionary function exception: (a) all claims that the Navy failed to provide Mr. Perkins with protective clothing, equipment, laundry service and/or facilities to shower or change, (b) all claims that the Navy failed to warn of para-occupational and environmental asbestos exposure hazards, and (c) all claims arising before March 1970. Dkt. 15. The Plaintiff concedes (c) that the United States is immune from all claims arising before March 1970. Dkt. 16 at 1 n.1. Accordingly, the United States' partial motion to dismiss claims arising before March 1970 (Dkt. 15) should be granted. The Plaintiff opposes the motion for claims based on the remaining acts described in (a) and (b). Dkt. 16. Each of these acts (a) and (b) will be assessed below using the two step process to determine whether the discretionary function applies.

          1. <u>Whether PSNS's Acts Were Discretionary?</u>

The Plaintiff points to three sources of mandatory asbestos directives she contends the Navy was required to follow: the March 1970 NAVMAT P-5100 (filed in the record at Dkt. 17-28), the February 9, 1971 Navy Ship Systems Command's NAVSHIPS Instruction 5100.26 (filed in the record at Dkt. 17-29), and the July 1972 measures incorporated into Chapter 9390 of

1  the Naval Ships Technical Manual (filed in the record at Dkt. 15-17).[1]  Dkt. 16.  Again, if there is

2  a mandatory directive and the government failed to follow it, the inquiry ends and the exception

3  does not apply.  *Nieves Martinez* at 876.

4        The Plaintiff argues in her response that the Navy failed to show that it adhered to its

5  mandatory asbestos containment policies.  Dkt. 16.  The government properly notes that its

6  motion is limited only to certain activities: (a) that of the Navy's failure to provide Mr. Perkins

7  with protective clothing, equipment, laundry and/or facilities to shower and change and (b) the

8  Navy's failure to warn of the danger of para-occupational or environmental exposures to

9  asbestos.  This opinion is limited to those actions that are the subject of the motion (a) and (b)

10 and does not reach any of the Plaintiff's other theories of liability.

      a.  *Navy's Failure to Provide Mr. Perkins with Protective Clothing, Equipment, Laundry Service and/or Facilities to Shower or Change*

      The March 1970 NAVMAT P-5100 directives explain that "[t]he most significant exposure to asbestos dust occurs during the ripout or tearout of asbestos materials aboard a ship. Exposures also result during the production and installation of asbestos containing materials." Dkt. 17-28 at 22.  In regard to the provision of protective clothing, these directives provided, in part:

> 2(c)(2) Personnel engaged in ripout operations will be provided and required to wear clean coveralls at the beginning of each shift. Prior to removing the dust respirator, used coveralls shall be removed. Clean or single-use coveralls shall be provided daily.

Dkt. 17-28 at 23.  Further, it provides that "mandatory precautions contained in this publication are characterized by use of the words *shall, must, prohibited.* Precautions which are not

---

[1] The Plaintiff points to other sources of mandatory asbestos control measures but these measures are dated after Mr. Perkins left the *USS Sacramento* on August 12, 1972.  Dkt. 16 at 16 n. 61.  On November 8, 1972, Mr. Perkins was released from the hospital and was assigned permanent light duty at PSNS's hobby shop, bowling alley and barracks until he left PSNS for Texas.

ORDER ON THE UNITED STATES' PARTIAL MOTION TO DISMISS - 7

mandatory but are recommended or advisory in nature are indicated by use of the words *should, will, may.*" Dkt. 17-28 at 21.

In July 1972, the Navy incorporated certain mandatory asbestos control measures into Chapter 9390 of the Naval Ships Technical Manual. As it relates to the provision of protective clothing, Chapter 9390.3 of the Naval Ships Technical Manual ("Precautions for Dust Producing Materials (Particularly Asbestos)") provided the following: "b. Workers shall be supplied clean coveralls or disposable coveralls for each work shift involving "rip-out" of insulation." Dkt. 15-17 at 4.

These two regulations constitute mandatory action on the part of the Navy: if Mr. Perkins was involved in the "ripout" or "tearout" of asbestos, the government was required to provide him protective clothing. This challenged action (provision of protective clothing if he did) did not involve an element of choice. *Terbush* at 1129. The government does not assert that it provided Mr. Perkins protective clothing but contends that as a Machinist Mate, Mr. Perkins was not engaged in the "ripout" or "tearout" of asbestos. The government fails to cite any authority for this proposition. It points to general studies, but does not demonstrate that Mr. Perkins did not "ripout" or "tearout" asbestos. Information from Mr. Perkins' performance evaluations leads to a reasonable inference that he was engaged in the "ripout" or "tearout" of asbestos after March of 1970. *See e.g.* Dkt. 15-4 at 13-14 (from December 17, 1969 to June 8, 1970, Mr. Perkins was assigned to maintenance of the steam heating system, doing work that included "maintain[ing] and repair[ing] steam leaks by replacing lines, thermostats and maintain[ing] all heating and ventilation systems onboard . . .") Parties do not dispute that asbestos insulation was used throughout those systems. At a minimum, there are genuine issues of material fact as to whether Mr. Perkins was involved in "ripout" or "tearout" of asbestos. Moreover, the government's

position, that Mr. Perkins was not involved in "ripout" or "tearout" of asbestos, is particularly troubling because it failed to respond to discovery requests from Mr. Perkin's family about his actual duties and assignments by raising the defense of discretionary function in its discovery response.

"The discretionary element is not met where a federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow." *Terbush* at 1129. The United States has failed to demonstrate that the step one, discretionary element, is met as to the provision of protective clothing for Mr. Perkins.

In contrast, the United States has carried its burden on step one as to its failure to provide Mr. Perkins with other protective equipment (like dust respirators), and/or laundry service and/or facilities to shower or change. While the regulations the Plaintiff points to do arguably require the provision of dust respirators, she fails to demonstrate that the failure to provide Mr. Perkins a respirator caused injury to Mrs. Perkins because her injury is alleged to be connected to doing his laundry and to environmental exposure from being downwind of PSNS. There is no plausible connection with the Navy's failure to provide him a respirator and her injury from doing his laundry or living downwind. Violated rules or policies must have a causal connection to the alleged FCTA injury for the court to have jurisdiction over the claim. *See Dichter-Mad Family Partners, LLP v. United States,* 709 F.3d 749, 751 (9th Cir. 2013)(finding alleged violations of policies lack a causal relationship to plaintiffs' alleged injuries required to establish jurisdiction so certain FTCA claims were properly dismissed). The same is true of the Navy's failure to provide Mr. Perkins a place to shower or change. There is no connection to the Navy's failure to provide Mr. Perkins a place to shower or change and Mrs. Perkin's contracting mesothelioma from doing his laundry or being downwind from PSNS. To the extent the Plaintiff bases her

claims on the government's failure to provide Mr. Perkins other protective equipment like dust respirators or a place to shower or change, the claim should be dismissed for lack of jurisdiction.

While the Navy's failure to provide Mr. Perkins laundry services is arguably connected to her injury from doing his laundry, none of the regulations to which the Plaintiff points required the government to provide Mr. Perkins with laundry services.  The June 7, 1973 BUMED Instruction 6260.14, which covers the laundering of asbestos contaminated clothing, came out after Mr. Perkin's hospitalization in the fall of 1972 and permanent transfer to light duty in PSNS's Hobby Shop, bowling alley, and barracks.  To the extent the Plaintiff bases her claims on the Navy's failure to provide Mr. Perkin's laundry services, this choice was discretionary and so, the analysis then turns to whether that decision is a policy based decision.  Step two on this issue is below in Section B. 2. a.

        b.  *Navy's Failure to Warn of Para-Occupational and Environmental Asbestos Exposure Hazards*

As it relates to warnings, an examination of each of the sources of mandatory conduct to which the Plaintiff points is unavailing for her on step one of the discretionary decision analysis. The March 1970 NAVMAT P-5100 required,

> 2(c)(3) Shipboard "ripout" of insulation shall be accomplished in designated exclusion areas. Only personnel whose work requires their presence shall be permitted in such areas. All personnel entering such areas shall be made aware of the hazards. Ships' force (crewmen) and others accomplishing essential duties in the removal area are required to wear approved respirators.

Dkt. 17-28 at 23.  The February 1971 Navy Ship Systems Command's NAVSHIPS Instruction 5100.26 required that:

> 3(b)(3) The area around the installation procedures should be isolated when possible. Adequate warning signs (enclosure (1)) will be posted. Only persons whose work requires their presence should be permitted in such areas. If airborne asbestos dust is present, they will wear Bureau of Mines approved respirators for dust or leave the area.

Dkt. 17-29 at 5.  The July 1972 Chapter 9390.3 of the Naval Ships Technical Manual ("Precautions for Dust Producing Materials (Particularly Asbestos)") provided the following:

> c. Shipboard "rip-out" of insulation shall be accomplished in designated areas. Only personnel whose work requires their presence shall be permitted in such areas. All personnel entering these areas shall be advised of the hazard. Crewmen and others accomplishing essential duties in the removal area are required to wear respirators.

Dkt. 15-17 at 4.

None of these regulations required the Navy to warn of the danger of para-occupational or environmental exposure to asbestos - the alleged causes of the Plaintiff's injuries.  Further, the June 7, 1973 BUMED Instruction 6260.14, requiring that "anyone who gives contaminated clothing to another person for laundering shall inform such person of the requirements to prevent the release of asbestos . . ." came after Mr. Perkin's transfer to light duty in the fall of 1972.  Accordingly, the government has shown that there was no mandatory action required, so it had discretion on whether to warn of the danger of para-occupational or environmental exposures to asbestos prior to the fall of 1972.  It has met step one on the "failure to warn of these dangers" claim.  Analysis on step two follows.

> 2. <u>Whether the Acts Involved Considerations of Social, Economic or Political Policies?</u>

For those activities that the government carried its burden on at step one (the governments' failure to provide Mr. Perkins laundry services and its failure to warn of the danger of para-occupational or environmental exposures), the next step is determining whether the government's failures involved the kind of decisions that the discretionary function exception was intended to shield - only those decisions involving "considerations of social, economic or political policies." *Nieves Martinez* at 876.

ORDER ON THE UNITED STATES' PARTIAL MOTION TO DISMISS - 11

      a. *Navy's Failure to Provide Mr. Perkins Laundry Services*

There was a legitimate, competing policy consideration underlying the government's failure to provide Mr. Perkins with laundry services – its felt it needed "to address simultaneous and more urgent safety concerns" presented by a range of hazards on PSNS it perceived to exist at the time. *Nanouk v. United States*, 974 F.3d 941, 949 (9th Cir. 2020). The government points out that its decisions regarding how to manage construction and repair work on vessels like the *USS Sacramento* are susceptible to policy analysis because at the time, during the Vietnam War, it was faced with numerous workplace safety decisions involving many potential hazards, including asbestos. Dkt. 15. It contends that it prioritized its actions based on the hazards it perceived at the time. *Id.* "Where there is even one policy reason why officials may decide not to take a particular course of action to address a safety concern, the exception applies." *Chadd v. United States*, 794 F.3d 1104, 1112 (9th Cir. 2015).

The Plaintiff argues that the government failed to show that it actually made the decision not to implement safety requirements based on policy considerations. This argument is unavailing. "The challenged decision need not be actually grounded in policy considerations, but must be, by its nature, susceptible to a policy analysis." *Schurg v. United States of Am.*, 63 F.4th 826, 834 (9th Cir. 2023). The government has carried its burden and demonstrated that its failure to provide laundry services to Mr. Perkins was a discretionary decision based on public policy.

      b. *Navy's Failure to Warn of Para-Occupational and Environmental Asbestos Exposure Hazards*

The government has shown that its failure to warn of para-occupational and environmental asbestos exposure hazards was based on competing public policy concerns.

Generally, "a decision not to warn of a specific, known hazard for which the acting agency is responsible is not the kind of broader social, economic or political policy decision that the discretionary function exception is intended to protect." *Sutton v. Earles*, 26 F.3d 903, 910 (9th Cir. 1994).

The government here, however, has shown that it did not fully know of the danger of para-occupational or environmental exposure of asbestos at the time. It properly points out that policy considerations are implicated in the decision of whether to issue warnings or not at the time including who should be warned, the content of the warning, form of the warning, impact of the warning on the recipient, and the impact on the Navy's mission. This would require "difficult judgments balancing the magnitude of the risk from [para-occupational and environmental asbestos exposure] — of which there was only fragmentary knowledge—against the risks and burdens of a public program. Those risks included the potential consequences of creating public anxiety and the health hazards inherent in the medical responses to the warning." *In re Consol. U.S. Atmospheric Testing Litig.*, 820 F.2d 982, 997 (9th Cir. 1987). The government's decision to not warn of para-occupational or environmental exposure to asbestos was sufficiently grounded in public policy to warrant application of the discretionary function exception.

### C. MISREPRESENTATION EXCEPTION TO FTCA'S WAIVER OF SOVEREIGN IMMUNITY

The government argues that, in the alternative, the Plaintiff's failure to warn claims should be dismissed based on 28 U.S.C. § 2680(h), which provides that "[a]ny claims arising out of misrepresentation [or] deceit" are excluded from the FTCA's waiver of sovereign immunity. Dkt. 15. The Court need not reach this argument because, as above, the government's decision

not to warn of para-occupational or environmental asbestos exposure hazards is protected by the discretionary function exception.

### D. CONCLUSION

The United States' partial motion to dismiss should be granted, in part, and denied, in part. This opinion is limited to the specific conduct by the government that was the subject of this motion. It does not cover other allegedly negligent conduct the Plaintiff alleges the Navy engaged in that caused Mrs. Perkin's injuries, like its failure to properly contain asbestos or to keep unnecessary people out of asbestos removal areas.

### III. ORDER

Therefore, it is hereby **ORDERED** that:

The United States' Partial Motion to Dismiss for Lack of Subject Matter Jurisdiction (Dkt. 15) **IS:**

- **GRANTED AS TO**:
  - Claims based on events arising before March 1970; claims based on the Navy's failure to provide Mr. Perkins with protective equipment like a dust respirator, laundry service, and/or a place to shower and/or change; and claims based on the Navy's failure to warn of para-occupational and environmental asbestos exposure hazards;
  - These claims **ARE DISMISSED**;
- **DENIED AS TO**:
  - Claims based on the Navy's failure to provide Mr. Perkins protective clothing.

ORDER ON THE UNITED STATES' PARTIAL MOTION TO DISMISS - 14

The Clerk is directed to send uncertified copies of this Order to all counsel of record and to any party appearing *pro se* at said party's last known address.

Dated this 26th day of June, 2023.

*[signature]*

ROBERT J. BRYAN
United States District Judge