1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| TRISTAN ROSE PERKINS, Independent Administratrix of Succession of the Decedent GERALDINE RABB PERKINS,<br><br>Plaintiff(s),<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>Defendant(s). | CASE NO. C22-5701-KKE<br><br>ORDER ON PRETRIAL MOTIONS |

The Court has scheduled a bench trial in this matter for June 10, 2024, and the parties have timely filed their pretrial motions, including motions in limine.  Dkt. Nos. 76, 78.  Plaintiff Tristan Rose Perkins also filed a motion to pre-admit certain exhibits.  Dkt. No. 74.  The Court discussed these motions with the parties at the pretrial conference on June 3, 2024.  Dkt No. 99.  As explained at the pretrial conference, the Court denies Perkins' motion to pre-admit certain exhibits, and denies the parties' motions in limine without prejudice to revisiting the issues at trial.

At the pretrial conference, the Court also heard argument from counsel as to the parties' general objections to the designation of certain depositions.  The Court will rule on the parties' general objections in this order, and will rule on the outstanding specific objections by separate order no later than June 7, 2024.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

## I.    FACTUAL BACKGROUND

This case arises from the June 6, 2020 death of Geraldine Rabb Perkins from pleural mesothelioma, which her estate alleges was caused by para-occupational and environmental exposure to asbestos fibers originating from Puget Sound Naval Shipyard ("the Shipyard").  Dkt. 1.  Her husband, Harang Joseph Perkins, a machinist mate enlisted in the U.S. Navy, was stationed at the Shipyard between 1968 and 1974 and worked aboard the *U.S.S. Sacramento*. *Id*.  Geraldine Perkins laundered his clothes and the family lived in a home approximately a mile from the Shipyard. *Id*.  Plaintiff (hereinafter "Perkins"), Geraldine Perkins' daughter and administratrix of her estate, filed this lawsuit against the United States (hereinafter "the Government") for negligence under the Federal Tort Claims Act. *Id*.

## II.    MOTION TO PRE-ADMIT EXHIBITS

Perkins filed a motion to pre-admit certain exhibits prior to trial "to enhance efficiency during trial by streamlining presentation of opening statements and [Perkins'] presentation of her case in chief, without the necessity of further argument during trial."  Dkt. No. 74 at 1–2.  The Government does not challenge the authenticity of the exhibits subject to the motion, but opposes their pre-admission on the grounds that the motion is premature and unnecessary: the Local Rules governing the pretrial statements contemplate that although the parties are instructed to memorialize their disputes as to the admissibility of exhibits before trial, the disputes themselves will be resolved at trial, not beforehand.  Dkt. No. 91 at 2–3 (citing Local Rules W.D. Wash. LCR 16).

The Court agrees with the Government that Perkins' motion to pre-admit exhibits is premature.  The Court will have ample opportunity to consider arguments related to the admissibility of exhibits at trial, and declines to do so via this motion.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

### III.    MOTIONS IN LIMINE

Parties may file motions in limine before or during trial "to exclude anticipated prejudicial evidence before the evidence is actually offered."  *Luce v. United States*, 469 U.S. 38, 40 n. 2 (1984).  To resolve motions in limine, the Court is generally guided by Federal Rules of Evidence 401 and 403.  Specifically, the Court considers whether evidence is relevant, meaning that it "has any tendency to make a fact more or less probable than it would be without the evidence" and that "the fact is of consequence in determining the action." Fed. R. Evid. 401.  The Court may exclude even relevant evidence, however, if "its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.

The Court notes that the findings and conclusions in this order, like all rulings in limine, are preliminary and can be revisited at trial based on the facts and evidence as they are actually presented.  *See, e.g.*, *Luce*, 469 U.S. at 41 (explaining that a ruling in limine "is subject to change when the case unfolds, particularly if the actual testimony differs from what was contained in the proffer" and that "even if nothing unexpected happens at trial, the district judge is free, in the exercise of sound judicial discretion, to alter a previous in limine ruling").

With these principles in mind, the Court turns to consider the pending motions.

### A.    The Court Denies Perkins' Motions in Limine.

*1.   Perkins' Motion to Exclude Testimony or Evidence Inconsistent with the Depositions of the Government's Rule 30(b)(6) Designees is DENIED.*

Perkins asserts that the Government's Rule 30(b)(6) designees were unprepared to provide answers on relevant topics during their depositions, and that the Government should therefore be precluded from offering evidence or testimony inconsistent with their "lack of knowledge" responses at the depositions.  Dkt. No. 76 at 2–11.  Perkins emphasizes that, for example, the Rule

30(b)(6) designees could not answer questions about the U.S. Navy's general knowledge of asbestos-related health hazards between 1968 and March 1974 (Topic 1); Harang Joseph Perkins' duties on the *U.S.S. Sacramento* or at the Naval Inactive Ship Maintenance Facility (and precautions taken by the Government to limit his exposure to asbestos while doing that work) (Topics 5–8); which documents support the Government's position that it complied with mandatory asbestos-related regulations in Harang Joseph Perkins' workplaces (Topics 9–10); what asbestos-related air monitoring was conducted on the *U.S.S. Sacramento* in 1971–72 (Topic 11); the identity, job duties, and work practices of any individuals that participated in the overhaul of the *U.S.S. Sacramento* in 1971–72 (Topic 20); or the facts and documents that support the Government's affirmative defenses and discovery responses (Topics 21–22)—despite the Government's confirmation that questions on those topics (among others) would be divided between its two Rule 30(b)(6) designees.

Indeed, the Government sought a protective order related to the Rule 30(b)(6) depositions, to preclude Perkins from asking questions "about topics that: (1) seek expert opinion; (2) seek legal opinions; and/or (3) are overbroad, unduly burdensome, or disproportionate to the needs of the case." Dkt. No. 30 at 2. The Government argued that Topics 5–8 sought expert opinions and/or require the Navy "to engage in research and analysis beyond its mission." *Id*. at 5–8. The Government also argued that Topics 10 and 21 sought a legal opinion, that Topics 9–10 and 20–21 are overbroad and unduly burdensome, and that Topic 22 is facially overbroad and seeks irrelevant information. *Id*. at 8–12, 14–15, 17. Judge Bryan denied the Government's motion, indicating during the conference that the Rule 30(b)(6) designees must testify to information known or reasonably available to the Government, and that if the designees' testimony was deficient, Perkins should make a record, inquire as to what efforts were made to obtain responsive

information and why the Government was unable to do so, and file a subsequent motion if appropriate. *See* Dkt. No. 37.

Because Perkins did not file a discovery-related motion by the deadline to do so under the case schedule, the Government contends that this motion in limine is untimely. Dkt. No. 90 at 3–6. Moreover, the Government contends that the motion should be denied due to substantive flaws as well (*id.*), because the Ninth Circuit has explained that a Rule 30(b)(6) designee's testimony "is not binding against the organization in the sense that the testimony can be corrected, explained and supplemented, and the entity is not irrevocably bound to what the fairly prepared and candid designated deponent happens to remember during the testimony." *Snapp v. United Transp. Union*, 889 F.3d 1088, 1103–04 (9th Cir. 2018). Although Perkins now argues that the designated deponents were *not* fairly prepared, she failed to comply with Judge Bryan's instructions to file a motion (to compel or for sanctions, etc.) if faced with deficient testimony.

The Court agrees with the Government that Perkins' motion is untimely and seeks an inappropriate remedy, and the Court therefore denies it. This ruling does not preclude Perkins from using the Rule 30(b)(6) deposition testimony in cross-examination: "[T]he testimony of a Rule 30(b)(6) deponent does not absolutely bind the corporation in the sense of a judicial admission, but rather is evidence that, like any other deposition testimony, can be contradicted and used for impeachment purposes." *Snapp*, 889 F.3d at 1104.

### 2. *Perkins' Motion to Exclude Testimony, Evidence, Comment, Argument, and Questioning Relating to Withdrawn Affirmative Defenses is DENIED.*

Perkins moves to preclude argument, questioning, or evidence related to affirmative defenses withdrawn by the Government. Dkt. No. 76 at 11–13. The Government previously withdrew eleven affirmative defenses in November 2023, retaining the "ability to raise defenses challenging [Perkins'] prima facie case at trial[.]" Dkt. No. 28 at 3. The Government withdrew

another five affirmative defenses in March 2024.  Dkt. No. 48.  The Government does not object to Perkins' motion in limine as it pertains to many of the withdrawn affirmative defenses, but notes that Perkins' motion mentions affirmative defenses pertaining to Perkins' prima facie case, specifically Affirmative Defenses 1–5, 8, and 17.  Dkt. No. 90 at 9.

It appears that the parties are talking past each other in their briefing on this motion: both essentially agree that the Government may raise defenses challenging Perkins' prima facie case, and that the Government will not present argument, questioning, or evidence related to the entirely withdrawn affirmative defenses (numbers 6, 7, 9, 10, 11, 14, 15, 16, 18, 19, 20).  To the extent that Perkins seeks to preclude the Government from challenging Perkins' prima facie case via Affirmative Defenses 1–5, 8, and 17, that motion is denied.

   3.  *Perkins' Motion to Exclude Christopher Herfel's Opinion Testimony Regarding the Applicability of U.S. Navy Asbestos Regulations and Issues of Industrial Hygiene is DENIED.*

Perkins requests an order precluding Herfel (one of the Government's expert witnesses) from testifying as to whether NAVMAT P-5100 and NAVSHIPS INST 5100.26 were mandatory or applicable policies, or on issues of industrial hygiene, as Herfel testified at his deposition that he was not qualified to offer an opinion on these issues.  Dkt. No. 76 at 13–15.  The Government's opposition indicates that it "does not intend to elicit testimony from Mr. Herfel regarding whether any particular Navy policy was "mandatory and specific," or to offer Herfel as "an expert in industrial hygiene or to elicit testimony from him regarding industrial hygiene."  Dkt. No. 90 at 9–10.  The Government does intend to elicit testimony from Herfel regarding "the Navy's asbestos-related practices, and the Navy's use of asbestos on ships and at shipyards[,]" (*id*. at 10), but it does not appear that Perkins' motion would pertain to such testimony.

In any event, the Government also acknowledges that Perkins "will have an opportunity to challenge the admissibility of Mr. Herfel's testimony at trial."  Dkt. No. 90 at 10.  To the extent

Perkins seeks a ruling in advance on the admissibility of Mr. Herfel's testimony, the motion is DENIED without prejudice to Perkins revisiting the issue at trial.

### 4. *Perkins' Motion to Exclude Dr. Christopher Kelsey's Opinion Testimony is DENIED.*

Perkins seeks to preclude Dr. Kelsey (one of the Government's expert witnesses) from offering an opinion that Geraldine Perkins' radiation treatment for her breast cancer caused her terminal malignancy.  Dkt. No. 76 at 15–17.  According to Perkins, Dr. Kelsey's expert report admits that he did not have any information specific to Geraldine Perkins' radiation treatment (radiation type and dose), and thus Perkins argues that Dr. Kelsey's radiation-causation opinion lacks foundation.  *Id.*

The Government opposes this motion as an untimely *Daubert* motion: the Local Rules require that any *Daubert* motion must have been filed by March 25, 2024.  *See* Local Rules W.D. Wash. LCR 16(b)(4); Dkt. No. 25 at 2.  The Government goes on to argue that even if the motion is untimely, it should be denied because Perkins' argument goes to the weight that should be afforded Kelsey's testimony, rather than its admissibility.  Dkt. No. 90 at 11–12.  Because arguments about reliability should be considered during a bench trial, rather than in advance, the Government opposes Perkins' motion.

The Court agrees with the Government that this motion is premature, and therefore denies the motion without prejudice to Perkins revisiting it at trial.

### B.   The Court Denies the Government's Motions in Limine.

### 1. *The Government's Motion to Exclude Dr. Nicholas Heyer's Testimony Regarding Statements Made During More Than 600 Interviews He Conducted at Harborview from 1981 to 1987 is DENIED.*

The Government seeks to preclude Dr. Heyer (one of Perkins' expert witnesses) from offering testimony describing statements made by patients he interviewed at Harborview from 1981 to 1987, to the extent the statements "involved patients who were not exposed to asbestos

1
2
3
4
5
6
7
8
9
10
11

and not present at Puget Sound Naval Shipyard [] between March 1970 to March 1974." Dkt. No. 78 at 2.  Dr. Heyer admitted at his deposition that he had not reviewed the medical records of any of the patients he interviewed, and the Government argues that if he is permitted to testify about his "amalgamated recollection of over 600 interviews with patients, which occurred approximately 40 years ago[,]" determining whether that testimony is relevant would "needlessly waste time" and "risk confusing the issues at trial because Dr. Heyer is not a fact witness who may testify substantively regarding his personal knowledge of the conditions at [the Shipyard] between 1970 and 1974[.]"  *Id*. at 6–7.  The Government also argues that any statements that Dr. Heyer can remember should be excluded as inadmissible hearsay because "Dr. Heyer does not possess specific information regarding individual Harborview interviews that would be sufficient" to permit the Court to determine whether a hearsay exception applies.  *Id*. at 8.

12
13
14
15
16
17
18
19

Perkins contends that the Government's motion essentially seeks reconsideration of Judge Bryan's ruling denying its *Daubert* motion.  *Compare* Dkt. No. 56 at 9 (the Government's *Daubert* motion requesting exclusion of Dr. Heyer's testimony to the extent it relies on his recollection of Harborview interviews) *with* Dkt. No. 65 at 6–7 (Judge Bryan's order denying the Government's motion on the grounds that its arguments for exclusion go more to the weight that should be afforded to Dr. Heyer's testimony, rather than its admissibility).  But Judge Bryan's order addresses whether Dr. Heyer's testimony should be excluded under Federal Rule of Evidence 702 (Dkt. No. 65 at 6–7), not whether it should be excluded on relevance or hearsay grounds.

20
21
22
23
24

In any event, the Court finds that the Government's motion is premature.  The Government acknowledges that *some* of Dr. Heyer's interview subjects worked at the Shipyard during the relevant time period (Dkt. No. 78 at 5–6), and the Court cannot determine at this point whether any part of Dr. Heyer's future testimony is relevant or constitutes inadmissible hearsay.  This motion is denied without prejudice to the Government revisiting the issue at trial.

1

2

    *2. The Government's Motion to Exclude Evidence Regarding the U.S. Navy's Alleged Policy Violations or Negligence Outside the Relevant Time Period (March 1970 through March 1974) is DENIED.*

3

    The Government contends that because Judge Bryan's prior rulings indicate that the relevant time period for Perkins' para-occupational exposure claim is March 1970 to August 1972, and that the temporal scope of Perkins' environmental exposure claim is March 1970 to March 1974, the Court "should exclude all evidence (testimony or documents) that reflects alleged policy violations and/or negligence after March 1974 because there is no nexus between [Geraldine Perkins'] alleged exposure from [the Shipyard] and Navy conduct after March 1974, when [Geraldine Perkins] left Bremerton, Washington." Dkt. No. 78 at 9. The Government notes that, for example, Perkins' exhibit list references documents that relate to air samples and asbestos-related policies at the Shipyard after March 1974, and that Perkins designated deposition testimony from industrial hygienists that worked at the Shipyard in the decades before 1970. *Id*. at 9–10. The Government thus seeks to exclude evidence related to time periods before or after the temporal scope of this case, if offered to establish violations of government policy and/or negligence. *Id*. at 11.

    Perkins' opposition clarifies that

> Plaintiff has no intention of arguing that violations of asbestos-related policies after the Perkins family moved away from Bremerton in 1974 caused or contributed to Ms. Perkins' environment or para-occupational exposures between March 1970 and March 1974. Rather, Plaintiff intends to offer evidence of the Navy's acts and omissions post-dating the March 1970–March 1974 exposure timeframe to provide, in part, circumstantial evidence of what the working conditions were like at [the Shipyard] during [the relevant time period]—as several witnesses and logic confirm that the worksite conditions with respect to industrial hygiene and asbestos controls improved over time—and how the Navy's mandatory industrial hygiene policies were inconsistently adhered to.

Dkt. No. 86 at 7–8.

Although the Government has provided some examples of evidence that it argues is irrelevant because it is outside the temporal scope of the issues in this case, it has not provided an exhaustive list of the evidence implicated by this motion.  Moreover, the Court finds that the Government's motion is premature, and that the motion should therefore be denied without prejudice to the Government's revisiting this issue at trial.  Perkins will have the opportunity to show that evidence related to a time period outside the temporal scope of this case is nonetheless relevant, and the Government may raise any appropriate objections as necessary at that time.

## IV.   GENERAL OBJECTIONS TO DEPOSITION DESIGNATIONS

### A.   Deposition of Roger Beckett

At the pretrial conference, the parties agreed that the Court need not resolve the objections as to Beckett's deposition designations because Beckett will be testifying at trial and his deposition need not be admitted.

### B.   Depositions of Cory Brickman & Robert Neal

As indicated at the pretrial conference, the Court finds that the Government cannot affirmatively offer the deposition testimony of Brickman or Neal, because they are the Government's own Rule 30(b)(6) witnesses and the Government has made no showing that they are unavailable to testify at trial.

### C.   Depositions of Larry Roemmich & Samuel Barboo

These depositions (from prior asbestos-related suits) are offered by the Government, and Perkins generally objects because the prior suits involved different claims and the "Perkins family was not represented by any party that can be considered a predecessor in interest under [Federal Rule of Evidence] 804(b)(1)."  Dkt. No. 94-1 at 1, Dkt. No. 94-2 at 1, Dkt. No. 94-3 at 1, Dkt. No. 94-4 at 1.

As noted by the Government (Dkt. No. 94-1 at 1), the "predecessor in interest" requirement is construed broadly, focusing on whether there is a "substantial identity of issues" between the suits and "the presence of an adversary with the same motive to cross-examine the deponent." *Hub v. Sun Valley Co.*, 682 F.2d 776, 778 (9th Cir. 1982). The Court finds that these two requirements have been generally satisfied here, such that the depositions will not be excluded in their entirety at this point. The Curt will rule on Perkins' specific objections via separate order.

**D.     Depositions of Daniel Bessmer & Carl Mangold**

These depositions (from prior asbestos-related suits) are offered by Perkins, and the Government generally objects because the testimony from both men concerns issues and observations outside the time period relevant to this case, and most of Bessmer's testimony involves a different shipyard as well. Dkt. No. 92 at 47, 51, 59. In addition, the Government was not a party in these prior suits. *Id*. The Government argues that under Federal Rules of Civil Procedure 32(a)(1) and 32(b), and Federal Rules of Evidence 401 and 611, these depositions should be excluded in their entirety. *Id*.

As noted in the previous subsection, the "predecessor in interest" requirement of Rule 32(a) is construed broadly, focusing on whether there is a "substantial identity of issues" between the suits and "the presence of an adversary with the same motive to cross-examine the deponent." *Hub*, 682 F.2d at 778. The Court finds that these two requirements have been generally satisfied here, such that the depositions will not be excluded in their entirety at this time. The Court will rule on the Government's specific objections via separate order.

## V.     CONCLUSION

The Court DENIES Plaintiff's motion to pre-admit exhibits (Dkt. No. 74), DENIES Plaintiff's motions in limine (Dkt. No. 76), and DENIES Defendant's motions in limine (Dkt. No.

78).   A subsequent order resolving the remainder of the parties' outstanding objections to the deposition designations will be filed no later than June 7, 2024.

Dated this 4th day of June, 2024.

Kymberly K. Evanson
United States District Judge